**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **TAMI M. JOHNSEN,** | **CASE NO.: 8:26-CV-_____** |
| Plaintiff, | |
| V. | **COMPLAINT** |
| **UNION PACIFIC RAILROAD COMPANY,** | **JURY DEMAND**<br>**Place of Trial:  Omaha, Nebraska** |
| Defendant. | |

COMES NOW, Plaintiff, Tami M. Johnsen, and for her causes of action against Union Pacific Railroad Company ("Union Pacific"), states and alleges the following:

## INTRODUCTION

1.     This is a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. §§ 48-1001 to 48-1010, and the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125, challenging the Defendant's unlawful discrimination and retaliation against, and termination of, the Plaintiff.

## JURISDICTION AND VENUE

2.     Plaintiff Tami M. Johnsen ("Ms. Johnsen") is a resident of Logan, Harrison County, Iowa.

3.    Defendant Union Pacific Railroad Company ("Union Pacific" or "UP") is a foreign corporation, incorporated in the State of Delaware, and licensed to do business with its principal place of business in Omaha, Douglas County, Nebraska.

4.    At all relevant times, including during the entirety of Ms. Johnsen's employment, Union Pacific employed at least fifteen (15) employees for each working day in each of twenty (20) or more calendar weeks within the appropriate time periods pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

5.    At all relevant times, including during the entirety of Ms. Johnsen's employment, Union Pacific employed at least fifteen (15) employees for each working day in each of twenty (20) or more calendar weeks within the appropriate time periods pursuant to the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1102(2).

6.    At all relevant times, including during the entirety of Ms. Johnsen's employment, Union Pacific employed at least twenty (20) employees for each working day in each of twenty (20) or more calendar weeks within the appropriate time periods pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 630(b).

7.    At all relevant times, including during the entirety of Ms. Johnsen's employment, Union Pacific employed more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year.  42 U.S.C. § 1981a.

8.    The Court has original jurisdiction over Ms. Johnsen's federal claims pursuant to 28 U.S.C. § 1331, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Further, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity

of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.    This Court has supplemental jurisdiction over Ms. Johnsen's claims arising under state law pursuant to 28 U.S.C. § 1367(a).

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) as this is a judicial district and state in which Union Pacific resides and pursuant to 28 U.S.C.(b)(2) as this is the judicial district where a substantial portion of the events giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

11.    On or about August 20, 2024, within 300 days of the acts of which she complains, Ms. Johnsen filed a dual Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC").

12.    The discriminatory acts described in this Complaint are not discrete, isolated events, but rather constitute a continuing violation of Title VII of the Civil Rights Act of 1964.

13.    As more fully described below, Plaintiff was subjected to a continuous pattern of harassment, discrimination, retaliation, and a hostile work environment that persisted through at least the date of Plaintiff's termination from employment. These acts were sufficiently related in nature and frequency to constitute a single, ongoing unlawful employment practice.

14.    Because at least one of the constituent acts contributing to this unlawful practice occurred within the statutory filing period within 300 days of the filing of Plaintiff's Charge of Discrimination with the EEOC and NEOC, all prior related acts are timely under the continuing violation doctrine. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

15.    On August 28, 2025, Plaintiff's counsel received the EEOC's Reasonable Cause Determination finding that there was reasonable cause to believe that discrimination had occurred.

16.    Plaintiff has satisfied all conditions precedent to filing this action and has exhausted her administrative remedies.

## FACTUAL BACKGROUND

### Ms. Johnsen's Employment History and Qualifications

17.    Plaintiff Tami M. Johnsen was employed by Union Pacific Railroad Company for more than twenty-six (26) years at Union Pacific's headquarters in Omaha, Nebraska.

18.    During her tenure at Union Pacific, Ms. Johnsen served in numerous roles of increasing responsibility, demonstrating her qualifications to perform a variety of positions throughout the company. Her roles, with the approximate dates of service in such roles, included the following:

    a.    AVP Network Technology (Operations) - March 2023 to November 2023

    b.    General Manager, Great Lakes Service Unit - September 2022 to March 2023

    c.    AVP Technology (Technology Department) - March 2021 to September 2022

    d.    General Superintendent (Technology Department, cross-functional experience) - July 2020 to May 2021

    e.    General Superintendent, Dispatching Southern Region - September 2019 to August 2020

    f.    General Superintendent, Dispatching Northern Region - July 2017 to September 2019

    g.    Superintendent, Council Bluffs Service Unit - February 2017 to July 2017

    h.    Senior Director of Intermodal Operations (system-wide) - January 2016 to February 2017

    i.    Director of Network Operations (UPS and Intermodal Operations) - February 2015 to January 2016

    j.    Director of Transportation Services - November 2012 to February 2015

    k.    Director of Terminal Operations - April 2012 to November 2012

    l.    Manager of Training and Attendance - January 2010 to April 2012

m. Manager of Transportation Operations, Council Bluffs/Omaha - December 2005 to January 2010

n. Manager of Yard Operations, Sioux City, Iowa - March 2004 to December 2005

o. Corridor Manager of Transportation, Dispatching Center - October 2001 to March 2004

p. Train Dispatcher - July 1997 to December 2001

19. This extensive employment history demonstrates Ms. Johnsen's long record of internal promotions, outstanding service to Union Pacific over nearly three decades, and her qualifications to work in numerous areas throughout Union Pacific at the time of her termination.

20. Throughout her tenure at Union Pacific, Ms. Johnsen received positive performance reviews.

21. Ms. Johnsen was never placed on a performance improvement plan, and she never received a negative performance review.

22. Ms. Johnsen consistently received performance scores indicating she met or exceeded expectations.

23. Union Pacific used Ms. Johnsen's name, image, and likeness on promotional materials highlighting women who lead successful careers at Union Pacific.

**Union Pacific Demotes Ms. Johnsen to Make Room for a Male Executive**

24. In April 2023, Union Pacific moved Ms. Johnsen from her role as General Manager of the Great Lakes Service Unit to the AVP of Network Technology position so that a male executive, Bryan Their, could retain employment within Union Pacific during its reorganization efforts.

25. In connection with this move, Union Pacific changed Ms. Johnsen's employment level from an 11 to a 12, which constitutes a demotion within Union Pacific's organizational structure.

26.     Union Pacific did not inform Ms. Johnsen that it was changing her employment level at the time of this change from General Manager of the Great Lakes Service Unit to the AVP of Network Technology.

27.     A few weeks later, Union Pacific placed Carl Garrison, a male employee, alongside Ms. Johnsen in her new role, claiming that he would be assisting her in her position.

28.     Union Pacific had Mr. Garrison begin shadowing Ms. Johnsen as she performed her work. Without explanation, Mr. Garrison began attending the same calls as Ms. Johnsen and was copied on emails she received.

29.     Union Pacific also had Mr. Garrison participate in meetings in which Ms. Johnsen should have been participating, effectively excluding her from these meetings.

30.     During this time period, Ms. Johnsen had several conversations with her immediate supervisor, Rod Doerr, regarding moving the Positive Train Control ("PTC") group under her supervision due to the overlap of tasks between that group and her own, and because the general director of the PTC group was intending to retire soon.

31.     Mr. Doerr informed Ms. Johnsen that following the restructuring scheduled to occur in November 2023, his understanding was that the PTC group would likely be moved under her supervision. Another director under Mr. Doerr repeated that same understanding to Ms. Johnsen.

**Union Pacific Terminates Ms. Johnsen**

32.     On November 1, 2023, Union Pacific, through Mr. Doerr and Workplace Relations Representative Christa Otto, informed Ms. Johnsen that her position as AVP of Network Technology had been eliminated and that she would not be placed in another position within the company.

33.     Ms. Johnsen was forty-eight (48) years old at the time of her termination.

34.    During the November 1, 2023 meeting, Mr. Doerr told Ms. Johnsen that she could apply for a train crew position in Des Moines, which would be a non-supervisory, union position with a severe reduction in pay and benefits.

35.    At the same time Ms. Johnsen was terminated, Mr. Garrison was given the duties Ms. Johnsen had performed in her role as AVP of Network Technology, and the PTC group was moved under his supervision—despite Mr. Garrison having less experience than Ms. Johnsen in that area.

36.    Upon information and belief, the title given to Mr. Harrison differed from Ms. Johnsen's prior title.  However, upon information and belief, the duties to be performed by Mr. Harrison were substantially similar to those performed by Ms. Johnsen.

37.    Prior to Ms. Johnsen's termination, she had been speaking with Mr. Doerr about a revised title for her position.

38.    Ms. Johnsen's supervisor gave her positive feedback in her AVP of Technology and AVP of Network Technology positions on multiple occasions, including after being notified of her termination.

**Union Pacific Offers Alternative Roles to Every Other Executive Except Ms. Johnsen**

39.    During the layoffs that occurred in November 2023, Union Pacific offered alternative roles to every other executive within Union Pacific who was otherwise impacted by the restructuring.

40.    Ms. Johnsen was the only executive at Union Pacific impacted by the layoffs who had raised multiple complaints of sexual harassment, discrimination, and retaliation.

41.    Union Pacific's executives, including those who were directly involved in the layoff decision-making process, were aware of Ms. Johnsen's complaints.

42.     Union Pacific's decision to exclude Ms. Johnsen from the opportunity for reassignment was without justification and was made as a result of and/or in connection with her past complaints.

43.     Union Pacific created a new position for Jennifer Bailey as AVP of Safety Analytics under Rod Doerr. Ms. Bailey had no experience in safety and field operations, yet Ms. Johnsen was not given the opportunity to serve in this role. Prior to her AVP of Safety Analytics position, Ms. Bailey had never made a complaint against anyone at Union Pacific for discrimination, harassment, or retaliation.  Further, Ms. Bailey is much younger than Ms. Johnsen.

44.     Union Pacific also created a new position for Steve Bybee, who (i) openly berated, intimidated, and disrespected Ms. Johnsen, (ii) was the subject of multiple Values Line complaints due to how he treated female employees, and (iii) openly engaged in retaliatory conduct.

45.     Union Pacific did not discipline Mr. Bybee for his conduct and, instead, rewarded him with the creation of a new position to allow him to remain employed at Union Pacific after the restructuring.

46.     Union Pacific terminated Ms. Johnsen when she was just short of completing thirty (30) years with the company, which would have entitled her to benefits such as lifetime health insurance and increased retirement payments, in addition to the salary, bonuses, stock awards, and other benefits she would have obtained during additional years of work.

47.     Union Pacific did not give Ms. Johnsen the opportunity to be placed in "the pool," an intermediate group of employees who were given the opportunity to remain at Union Pacific for several months prior to being laid off. Union Pacific assigned various projects to employees in the pool and made them available to Union Pacific leaders for permanent hire as needs arose, thereby extending their length of service with the company.

**Ms. Johnsen's History of Complaints of Discrimination, Harassment, and Retaliation**

48.     Union Pacific's decision to terminate Ms. Johnsen was without cause and directly related to her past complaints of discrimination, harassment, and retaliation, as set forth below.

49.     In July 2022, Ms. Johnsen was successfully working as the AVP of Technology when she was asked to serve as interim General Manager of the Great Lakes Service Unit because Jim Brooks, the then-current general manager, needed to take leave for his wife's liver transplant. Without hesitation, Ms. Johnsen agreed to accept the position, even though the Great Lakes Service Unit was the worst-performing service and safety unit based on company metrics. At that time, Union Pacific had very few women in field executive positions.

50.     On her _first day_ in the interim position, Steve Bybee berated Ms. Johnsen on the operating call. Mr. Bybee refused to allow her to speak, attempted to embarrass her about the Great Lakes Service Unit's performance (for which she was not even responsible), and made repeated attempts to belittle her—including criticizing her for not knowing about trains in her territory and their delays at Mankato and Dennison, Iowa.

51.     Mr. Bybee continued to engage in intimidating, condescending, and disrespectful conduct toward Ms. Johnsen. Male employees who observed Mr. Bybee's conduct toward Ms. Johnsen called her to inform her that he did not treat men the same way and that his conduct was "way out of line." One male employee specifically noted that Mr. Bybee never treated Ms. Johnsen's predecessor, Jim Brooks, the same way he treated her.

52.     Following one such call, Eric Gehringer came to Ms. Johnsen's office and said words to the effect of: "Hey. I just want to let you know, after that happened with Steven on the call, I went right to his office and talked to him about talking to you that way."

53.     In August 2022, following another round of berating by Mr. Bybee, Ms. Johnsen asked Mr. Bybee if he treated her the way he did because she was a woman. Mr. Bybee denied

doing so but self-reported his conversation with Ms. Johnsen to his direct supervisor, Danny Torres. Mr. Torres told Ms. Johnsen that she should call Dawn Wendall and report Mr. Bybee's conduct, which she did.

54.    Ms. Johnsen told Ms. Wendall that she felt Mr. Bybee treated her differently due to her sex, which many others could substantiate, including Mr. Torres.

55.    Ms. Wendall confirmed to Ms. Johnsen that Mr. Bybee had been similarly reported two other times due to how he treated female employees.

56.    Union Pacific did not discipline Mr. Bybee for his prior conduct against other women or in connection with his treatment of Ms. Johnsen, despite multiple witnesses to his actions.

57.    In October 2022, Beth Whited, then in the Human Resources department and now the President of Union Pacific, remarked to Ms. Johnsen that she knew Mr. Bybee was "being an asshole" to her.

58.    On October 14, 2022, Union Pacific offered Ms. Johnsen the permanent General Manager position for the Great Lakes Service Unit, which she accepted.

59.    Before accepting the position, Ms. Johnsen told Mr. Torres that she was afraid Mr. Bybee would try to get her fired because she had reported him to Human Resources.

60.    Ms. Johnsen's retaliation fears proved valid. In October 2022, someone reported Ms. Johnsen for telling an engineering employee, "Stop having your fucking bosses call me." Notably, Ms. Johnsen had immediately apologized to the engineering employee for her statement, and that employee hugged her and said she was still his favorite.

61.     Mr. Torres told Ms. Johnsen that Union Pacific was not going to pursue the complaint further because he believed it was a retaliatory complaint against her and not legitimate, as the head of the engineering department, Russ Rholfs, was close friends with Mr. Bybee.

62.     Mr. Torres believed that Mr. Bybee was the reason Mr. Rholfs turned in Ms. Johnsen's comment.

63.     In November 2022, John Turner called Ms. Johnsen to inquire about the North Yard Operations. He made a point to tell her that he had "just had a couple beers" with Mr. Bybee the night before.

64.     In December 2022, during an operations call, Mr. Turner said to Ms. Johnsen in a loud and intimidating manner, "Hey Tami, heard you don't want my team's help anymore." Ms. Johnsen replied, "I am not sure what you are referring to, Sir." Mr. Turner stated, "If you ever take another locomotive without my team's approval again, you watch and see what I do next."

65.     To Ms. Johnsen's knowledge, this directive was entirely without basis and appeared to be a threat designed to intimidate her.

66.     Immediately after the call, Mr. Torres called Ms. Johnsen and told her to report Mr. Turner for threatening her during the operations call.

67.     Ms. Johnsen reported the incident anonymously through the Union Pacific Values Line hotline due to the retaliation she was already experiencing from reporting Mr. Bybee's conduct. During this call, Ms. Johnsen also reported sex discrimination and workplace violence due to Mr. Turner's conduct.

68.     The Values Line Manager told Ms. Johnsen that three other people had reported Mr. Turner due to his conduct toward her.

69.    Ms. Johnsen is unaware of Mr. Turner having been disciplined as a result of his behavior.

### Union Pacific's Knowledge of Ms. Johnsen's Complaints and the "Burned Bridges" Comment

70.    Mr. Turner's direct supervisor was Eric Gehringer.

71.    Mr. Gehringer was the Union Pacific employee who later removed Ms. Johnsen from her position as the General Manager of the Great Lakes Service Unit in favor of a male employee who was impacted by the Fall 2023 layoffs.

72.    Ms. Johnsen's immediate supervisor when she served as AVP of Network Technology was Rod Doerr.

73.    Following the November 2023 layoffs, Mr. Doerr stated to Kate Betsworth that he had "shopped" Ms. Johnsen around to other departments within Union Pacific to try to avoid her being laid off, but she had "burned too many bridges."

74.    Ms. Betsworth understood Mr. Doerr's comment to be a reference to the complaints Ms. Johnsen had previously made about her treatment at Union Pacific.

75.    Notably, several months after her termination, Ms. Johnsen learned that multiple executives at Union Pacific had not been approached about hiring Ms. Johnsen for positions in their departments even though she would have been qualified for such roles.

76.    During the November 2023 layoffs, Ms. Betsworth was placed into "the pool" in lieu of immediate termination. While in "the pool," Ms. Betsworth sought out Eric Gehringer, who told her that if she did not find an alternative position, he would place her as a Manager of Transportation in the Northern Region.

77.    When Ms. Betsworth heard this, she was surprised because Ms. Johnsen was substantially more qualified for such a role. Yet, that opportunity was not offered to Ms. Johnsen.

**Union Pacific's Pretextual Justifications for Terminating Ms. Johnsen**

78. When concerns were raised about Ms. Johnsen's termination, Union Pacific offered pretextual justifications that lack credibility.

79. Union Pacific claimed that different people were involved with Ms. Johnsen's discrimination, harassment, and retaliation complaints than were involved with the decisions to (i) move her from the General Manager position to the AVP Network Technology position, (ii) eliminate her AVP Network Technology position, and (iii) not place her in a new role or create a new role for her as they had done for other executives. This claim lacks credibility for the following reasons:

    a. Upon information and belief, Beth Whited was in the role of President and Eric Gehringer was in the role of Executive Vice President of Operations at the time of these employment decisions. Ms. Whited and Mr. Gehringer had extensive knowledge of Ms. Johnsen's complaints, and both report directly to Union Pacific's CEO, Jim Vena.

    b. Multiple people within Operations and Human Resources were aware of Ms. Johnsen's complaints. It is implausible that the decisionmakers involved in the adverse employment actions taken against Ms. Johnsen were neither aware of her past claims against the company nor influenced by those who were aware of her claims.

    c. Upon information and belief, Mr. Gehringer was highly involved in the decisions of who would be retained in the restructured format and worked closely with Christa Otto. A Vice President within the company told Ms. Johnsen that Mr. Gehringer and Ms. Otto worked "all weekend" to create the

new organizational structure, assign names to the new positions, and keep those decisions confidential.

80. Union Pacific claimed that Ms. Johnsen was not performing well, which led to her termination. This allegation is contradicted by the following facts:

    a. Ms. Johnsen consistently received performance scores indicating she met or exceeded expectations.

    b. Ms. Johnsen received clear direction that her scores were very respectable.

    c. Ms. Johnsen was never given a score indicating a failure to meet expectations.

    b. Following Ms. Johnsen's termination, she received positive comments about her work ethic and performance from colleagues who were sorry she was terminated.

    c. Ms. Johnsen received numerous positive comments from Eric Gehringer and Rod Doerr via emails, Teams messages, and meetings about her performance.

81. Union Pacific claimed that Ms. Johnsen impermissibly hired an independent contractor to perform portions of her role as AVP Network Technology. This allegation demonstrates an effort by Union Pacific to impermissibly justify its termination of Ms. Johnsen by wrongfully casting aspersions upon her character. The following facts refute this allegation:

    a. Ms. Johnsen sought to hire additional employees to assist with a large project-RCO implementation and technology needs. Rod Doerr agreed this was necessary.

    b. However, Eric Gehringer asked Ms. Johnsen to consider using independent contractors rather than hiring new employees because independent contractors

were not permanent, and Union Pacific could terminate the relationship once the job was completed.

b. Mr. Doerr was consulted about the hire prior to it taking place on multiple occasions and expressly told Ms. Johnsen that the independent contractor could be paid out of his "CMS budget."

c. The contractor, Tanmay, was assigned a computer and a cubicle two spaces from Mr. Doerr's office. Tanmay was placed on the organizational chart under Ms. Johnsen's name, attended meetings, appeared on documents and PowerPoint presentations, and attended an onsite vendor meeting with Mr. Doerr and Ms. Johnsen.

d. Tanmay was not performing Ms. Johnsen's work. Rather, Tanmay was hired to complete specific tasks associated with RCO implementation and other business needs, as Mr. Doerr is well aware.

82. Union Pacific retained less qualified and younger individuals than Ms. Johnsen while terminating her employment.

83. Following Ms. Johnsen's termination, Union Pacific wrongfully and falsely reported that she had signed a severance agreement, which resulted in her being denied unemployment benefits to which she was entitled.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**DISCRIMINATION BASED ON SEX/GENDER**

84.     Plaintiff realleges and incorporates by reference paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's sex.

86.     Ms. Johnsen is a member of a protected class based on her sex (female).

87.     Ms. Johnsen was qualified for her position at Union Pacific, as demonstrated by her more than twenty-six years of service, her extensive experience in multiple roles throughout the company, and her consistently positive performance reviews.

88.     Ms. Johnsen suffered adverse employment actions, including but not limited to: (a) being demoted from her position as General Manager of the Great Lakes Service Unit to AVP of Network Technology to make room for a male executive; (b) having her employment level changed from an 11 to a 12, constituting a demotion; (c) being terminated from her employment on November 1, 2023; and (d) being denied the opportunity for reassignment or placement in "the pool" while other executives were given such opportunities.

89.     These adverse employment actions occurred under circumstances giving rise to an inference of discrimination based on sex, including but not limited to: (a) Ms. Johnsen was replaced in her General Manager position by a male executive; (b) Mr. Garrison, a male employee with less experience than Ms. Johnsen, was given Ms. Johnsen's duties and the PTC group following her termination; (c) Union Pacific created new positions for other employees, including males who had been the subjects of complaints for mistreatment of female employees; and (d) Ms. Johnsen was subjected to harassment and discriminatory treatment by male executives, including Mr. Bybee and Mr. Turner, who were not disciplined for their conduct.

90.     Union Pacific's proffered reasons for its adverse employment actions against Ms. Johnsen are pretextual and unworthy of credence.

91.     As a direct and proximate result of Union Pacific's unlawful discrimination, Ms. Johnsen has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, humiliation, and mental anguish.

92.     Union Pacific's conduct was willful, intentional, and in reckless disregard of Ms. Johnsen's rights.

WHEREFORE, Plaintiff Tami M. Johnsen demands judgment against Defendant Union Pacific Railroad Company for back pay; prejudgment interest; front pay as reinstatement is not a viable option given Union Pacific's conduct, the passage of time, and other changes in circumstances; compensatory damages for emotional distress, mental anguish, and humiliation; punitive damages; reasonable attorneys' fees; costs; post-judgment interest; and such other legal or equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### HARASSMENT AND HOSTILE WORK ENVIRONMENT BASED ON SEX/GENDER

93.     Plaintiff realleges and incorporates by reference paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94.     In addition to and as described in the allegations asserted above (see, e.g., Complaint ¶¶ 17-83), Ms. Johnsen was subjected to unwelcome, harassment and discriminatory treatment throughout her employment that was based on Ms. Johnsen being a female.

95.     The conduct was sufficiently severe or pervasive to alter the conditions of Ms. Johnsen's employment and create an abusive working environment.

96.     This conduct was not only perpetuated by Ms. Johnsen's supervisors and members of Union Pacific's upper management team, as alleged more fully above, but such supervisors and

members of management condoned the behavior of co-workers towards Ms. Johnsen and failed to effectively act to prevent or remedy such conduct.

97.     As a direct and proximate result of Union Pacific's unlawful harassment and creation of a hostile work environment, Ms. Johnsen has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, humiliation, and mental anguish.

98.     Union Pacific's conduct was willful, intentional, and in reckless disregard of Ms. Johnsen's rights.

WHEREFORE, Plaintiff Tami M. Johnsen demands judgment against Defendant Union Pacific Railroad Company for back pay; prejudgment interest; front pay as reinstatement is not a viable option given Union Pacific's conduct, the passage of time, and other changes in circumstances; compensatory damages for emotional distress, mental anguish, and humiliation; punitive damages; reasonable attorneys' fees; costs; post-judgment interest; and such other legal or equitable relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### RETALIATION

99.     Plaintiff realleges and incorporates by reference paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), makes it unlawful for an employer to discriminate against any employee because she has opposed any practice made an unlawful employment practice by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

101.    Ms. Johnsen engaged in protected activity by complaining of sex discrimination and harassment to Union Pacific management and Human Resources, including but not limited to: (a) reporting Steve Bybee's discriminatory and harassing conduct to Dawn Wendall and Human Resources; (b) reporting John Turner's threatening and discriminatory conduct through the Values Line hotline; and (c) reporting sex discrimination and workplace violence.

102.    Ms. Johnsen suffered adverse employment actions, including but not limited to: (a) being demoted from her position as General Manager of the Great Lakes Service Unit; (b) being terminated from her employment on November 1, 2023; (c) being denied the opportunity for reassignment; and (d) being denied placement in "the pool."

103.    There is a causal connection between Ms. Johnsen's protected activity and the adverse employment actions she suffered. This causal connection is demonstrated by, among other things: (a) Union Pacific's knowledge of Ms. Johnsen's complaints at the highest levels of the organization, including Beth Whited, Eric Gehringer, Rod Doerr, Danny Torres, and others involved in the termination decision; (b) Mr. Doerr's statement that Ms. Johnsen had "burned too many bridges," which Ms. Betsworth understood to reference Ms. Johnsen's prior complaints; (c) the temporal proximity between Ms. Johnsen's complaints and the adverse employment actions; and (d) Union Pacific's failure to discipline the individuals Ms. Johnsen complained about while simultaneously terminating her employment and creating new positions for them.

104.    Union Pacific's proffered reasons for its adverse employment actions against Ms. Johnsen are pretextual and unworthy of credence.

105.    Ms. Johnsen was the only executive impacted by the November 2023 layoffs who had raised multiple complaints of sexual harassment, discrimination, and retaliation.

106.    As a direct and proximate result of Union Pacific's unlawful retaliation, Ms. Johnsen has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, humiliation, and mental anguish.

107.    Union Pacific's conduct was willful, intentional, and in reckless disregard of Ms. Johnsen's rights.

WHEREFORE, Plaintiff Tami M. Johnsen demands judgment against Defendant Union Pacific Railroad Company for back pay; prejudgment interest; front pay as reinstatement is not a viable option given Union Pacific's conduct, the passage of time, and other changes in circumstances; compensatory damages for emotional distress, mental anguish, and humiliation; punitive damages; reasonable attorneys' fees; costs; post-judgment interest; and such other legal or equitable relief as the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE NEBRASKA FAIR EMPLOYMENT PRACTICE ACT**
**DISCRIMINATION AND RETALIATION BASED ON SEX**

108.    Plaintiff realleges and incorporates by reference paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    The Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1104, makes it an unlawful employment practice for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's sex.

110.    The NFEPA, Neb. Rev. Stat. § 48-1114, also makes it unlawful for any employer to discriminate against any of its employees because such employee has opposed any practice made an unlawful employment practice by the NFEPA or because such employee has made a

charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing conducted pursuant to the NFEPA.

111.    As set forth above, Union Pacific discriminated against Ms. Johnsen on the basis of her sex and retaliated against her for engaging in protected activity.

112.    As a direct and proximate result of Union Pacific's violations of the NFEPA, Ms. Johnsen has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, humiliation, and mental anguish.

WHEREFORE, Plaintiff Tami M. Johnsen demands judgment against Defendant Union Pacific Railroad Company for back pay; prejudgment interest; front pay as reinstatement is not a viable option given Union Pacific's conduct, the passage of time, and other changes in circumstances; compensatory damages for emotional distress, mental anguish, and humiliation; reasonable attorneys' fees; costs; post-judgment interest; and such other legal or equitable relief as the Court deems just and proper.

### FIFTH CAUSE OF ACTION
**VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 AND THE NEBRASKA AGE DISCRIMINATION IN EMPLOYMENT ACT DISCRIMINATION BASED ON AGE**

113.    Plaintiff realleges and incorporates by reference paragraphs 1 through 112 of this Complaint as if fully set forth herein.

114.    The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a), makes it unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's age.

115.    The Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. § 48-1004, similarly prohibits age discrimination in employment.

116. Ms. Johnsen is a member of a protected class based on her age. She was forty-eight (48) years old at the time of her termination.

117. Ms. Johnsen was qualified for her position at Union Pacific, as demonstrated by her more than twenty-six years of service, her extensive experience in multiple roles throughout the company, and her consistently positive performance reviews.

118. Ms. Johnsen suffered adverse employment actions, including but not limited to: (a) being terminated from her employment on November 1, 2023; (b) being denied the opportunity for reassignment; and (c) being denied placement in "the pool."

119. These adverse employment actions occurred under circumstances giving rise to an inference of discrimination based on age. Union Pacific retained less qualified and younger individuals than Ms. Johnsen while terminating her employment.

120. Union Pacific terminated Ms. Johnsen when she was just short of completing thirty (30) years with the company, which would have entitled her to significant benefits, including lifetime health insurance and increased retirement payments.

121. Ms. Johnsen's age was the "but for" cause of Union Pacific's decision to terminate her employment and deny her the opportunity for reassignment.

122. Union Pacific's proffered reasons for its adverse employment actions against Ms. Johnsen are pretextual and unworthy of credence.

123. As a direct and proximate result of Union Pacific's unlawful age discrimination, Ms. Johnsen has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, humiliation, and mental anguish.

124. Union Pacific's conduct was willful, knowing, and in reckless disregard of Ms. Johnsen's rights, entitling Ms. Johnsen to liquidated damages pursuant to 29 U.S.C. § 626(b).

WHEREFORE, Plaintiff Tami M. Johnsen demands judgment against Defendant Union Pacific Railroad Company for back pay; prejudgment interest; front pay as reinstatement is not a viable option given Union Pacific's conduct, the passage of time, and other changes in circumstances; compensatory damages for emotional distress, mental anguish, and humiliation; liquidated damages pursuant to the ADEA; reasonable attorneys' fees; costs; post-judgment interest; and such other legal or equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Tami M. Johnsen hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tami M. Johnsen respectfully requests that this Court enter judgment in her favor and against Defendant Union Pacific Railroad Company as follows:

A.	Declaratory relief finding that Union Pacific's conduct violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Nebraska Fair Employment Practice Act, and the Nebraska Age Discrimination in Employment Act;

B.	An award of back pay, with prejudgment interest, for all wages and benefits lost as a result of Defendant's unlawful conduct;

C.	An award of front pay as reinstatement is not a viable option given Union Pacific's conduct, the passage of time, and other changes in circumstances;

D.	Compensatory damages for emotional distress, mental anguish, and humiliation;

E.	Punitive damages under 42 U.S. Code § 1981a in an amount sufficient to punish Defendant and deter future misconduct;

F.	Liquidated damages pursuant to the ADEA;

G.	Reasonable attorneys' fees and costs of this action;

H.	Pre-judgment and post-judgment interest; and

I.      Such other and further relief as the Court deems just and proper.

Dated this 6th day of February, 2026.

Respectfully submitted,

TAMI JOHNSEN, PLAINTIFF

By:     /s/ Patrick T. Vint
        Patrick T. Vint, 26176
        Audrey Svane, No. 25830
        Woods | Aitken LLP
        301 South 13th Street, Suite 500
        Lincoln, NE 68508
        Phone:  402-437-8500
        Email:  asvane@woodsaitken.com
        Attorneys for Plaintiff